**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Steven T. Kattke,

Plaintiff,

v.

The Independent Order of Foresters,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-276 ADM/AJB

---

Robert Bennett, Esq., Gartner, Bennett & Schupp, Minneapolis, MN, appeared for and on behalf of the Plaintiff.

Dayle Nolan, Esq., Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge pursuant to Defendant's Motion for Summary Judgment [Doc. No. 14]. For the reasons set forth below, the motion is granted.

## II. BACKGROUND

Plaintiff Steven Kattke ("Kattke") has brought suit against his former employer, the Independent Order of Foresters ("IOF"), alleging a claim of promissory estoppel and alternatively, a claim under Minnesota Statutes sections 181.64-65, false statements as inducement to entering employment. The claims concern Kattke's allegation that IOF failed to fulfil a promise of employment as a regional vice president. As required on summary judgment, the following facts are reviewed in a light most favorable to the non-movant, Kattke. *FDIC v.*

FILED MAY 22 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD MAY 22 2001
DEPUTY CLERK

*Bell*, 106 F.3d 258, 263 (8th Cir. 1997).

Ed Garrison ("Garrison") of the Garrison Organization recruits and hires executives for insurance and financial services companies. Garrison Dep. at 6-7. In 1997, Gary Schulte of IOF retained Garrison to recruit new managers for IOF. *Id.* at 10-14. Garrison placed a number of regional and district sales managers with IOF in 1997 & 1998. *Id.* at 13-16. In early 1999, Steve Stone ("Stone"), the vice president of sales at IOF, sought to recruit a number of IOF regional vice presidents ("RVPs") with Garrison's help. *Id.* at 19-21.

In late 1998, Kattke learned that his current position with Prudential Insurance was going to terminate in early 1999. Kattke Dep. at 90. Kattke approached Garrison to help him locate a new job. *Id.* In early 1999, Garrison informed Kattke of the IOF RVP position, and facilitated a meeting between Kattke and Stone in February. *Id.* at 105. During ensuing discussions about the opportunity, Kattke told Stone that he would require compensation of $300-350,000 for the position. *Id.* at 165-66. Stone pursued assembling a sales territory sufficiently large to meet Kattke's compensation requirement. *Id.* at 169-70. Stone remarked to Kattke that "money was no object." *Id.* at 146.

As negotiations continued, Stone stated to Kattke that "he wanted [him] to be a regional vice president for [IOF]." *Id.* at 180. However, he also said that there was no "formal agreement" yet. *Id.* Stone indicated that a formal agreement should be in place around July 1, 1999. *Id.* He told Kattke that when finalized, his salary as RVP would be around $330,000. *Id.* at 248. Because Stone did not want him to accept another job in the interim, he offered Kattke an "intermediate position" as IOF's director of emerging markets. *Id.* at 180-81. The salary for this position was $150,000 a year. *Id.* at 181. Kattke accepted and started working in this

capacity on May 10, 1999. *Id.* at 184.

Soon thereafter, Kattke received a letter from Stone formally offering him the emerging markets position. *Id.* at 182-84. It reads, "[y]our compensation package will include a base salary of $150,000 per annum and employee benefits. It is expected that you will be in this role for a six-month period." Nolan Aff. Ex. B. Kattke signed the letter on May 20, 1999, accepting IOF's offer of employment. *Id.* Ex. B. Also on May 20th, Kattke signed another document sent by IOF regarding the employment offer. *Id.* Ex. C. This document is titled "AT WILL EMPLOYMENT." *Id.* Ex. C. It states that:

> I understand and acknowledge that employment at IOF Forester is at will. . . There is no promise that employment will continue for a specified period of time nor is there a promise that employment will only be terminated under particular circumstances. This constitutes the entire agreement regarding the terms and conditions of employment. Only the president of IOF Foresters can alter this agreement and only in a written document, which is signed and dated by the president.

*Id.* Ex. C.

July and August passed without Kattke moving into the RVP position. In September of 1999, IOF conducted interviews for the RVP positions. Kattke Dep. at 303. Kattke interviewed believing he was already slated to fill the position. *Id.* Afterwards, Stone told Kattke that he did not do well in the interview and would not be moving forward in the RVP assessment process. *Id.* Upset at not receiving a RVP position, Kattke began looking for new employment. He quit IOF and was hired by Met Life Financial Services as a managing director in California on December 6, 1999. Kattke Aff. ¶ 4. Kattke's salary at Met Life began at approximately $280,000 a year. *Id.*

## III. DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be awarded to a party if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party "bears the initial burden of proving that summary judgment is appropriate." *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[T]hat party must demonstrate 'that there is an absence of evidence to support the non-moving party's case.'" *Buck v. FDIC*, 75 F.3d 1285, 1289 (8th Cir. 1996) (quoting *Celotex*, 477 U.S. at 325).

If the movant meets this burden, the nonmovant has the task of citing particular facts in the record that exhibit there is a "genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986). When examining the rebuttal evidence, a court must view it "in the light most favorable to the nonmoving party." *Bell*, 106 F.3d at 263. If the nonmovant fails to set forth specific facts showing a genuine issue of fact, summary judgment is appropriate. *Celotex*, 477 U.S. at 323.

### B. Promissory Estoppel

Kattke's promissory estoppel cause of action alleges that IOF promised but never appointed him to a position as a RVP. In the employment area, promissory estoppel is an "equitable remedy that 'may be used to enforce a promise of employment where no express contract of employment exists.'" *Fox v. T-H Cont'l Ltd. P'ship*, 78 F.3d 409, 413 (8th Cir. 1996) (quoting *Eklund v. Vincent Brass & Aluminum*, 351 N.W.2d 371, 378 (Minn. Ct. App. 1984)). Under Minnesota law, there are three elements to a promissory estoppel claim. The plaintiff

must prove that: (1) "the employer made a clear and definite promise to the employee"; (2) the promisor intended that the promisee rely on the promise and reasonable reliance occurred to the promisee's detriment; and (3) "the promise must be enforced to prevent injustice." *See Fox*, 78 F.3d at 413 (citing *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995)); *Ruzicka v. Conde Nast Publ'n, Inc.*, 999 F.2d 1319, 1320 (8th Cir. 1993) (citing *Cohen v. Cowles Media, Co.*, 479 N.W.2d 387, 391 (Minn. 1992)). Because Kattke fails to meet the elements of promissory estoppel[1], summary judgment is granted.

**1. Clear & Definite Promise**

The record is devoid of a promise, let alone a "clear and definite" promise. In the employment context, this element requires a "specific promise made by the employer." *Hunt v. IBM Mid-Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 856 (Minn. 1986); *accord United Shippers Coop. v. Soukup*, 459 N.W.2d 343, 346 (Minn. Ct. App. 1990). The alleged clear and definite promise must be an explicit assertion "without any doubt or tentativeness." *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 50-51 (Iowa 1999). More than subjective impressions and assumptions are required to create a genuine issue of fact. A plaintiff "must show objective evidence of [the promisee's] intent and cannot rely on his own subjective beliefs" to survive summary judgment. *Aberman v. Malden Mills Indus., Inc.*, 414 N.W.2d 769, 771 (Minn. Ct. App. 1987); *accord Karazanos v. Madison Two Assoc.*, 147 F.3d 624, 630-31 (7th Cir. 1998); *J.R. Simplot Co. v. Sales King Int'l, Inc.*, 17 P.3d 1100, 1007 (Utah 2000); *Hunt*, 384

[1]While Kattke's allegations of similar conduct towards other RVP recruits may be relevant at trial to bolster a legally sufficient claim on issues such as credibility, the statements to others similarly situated cannot be used in the absence of a prima facie case of promises made to this particular employee.

N.W.2d at 856.

The non-movant must set forth specific evidence of record to raise a question of fact. *See Anderson*, 477 U.S. at 248-49. Kattke has failed to identify a specific "clear and definite" promise made by IOF to him that he was guaranteed a RVP position. The citations to the record reveal the alleged "promises" to be indeterminable and not unequivocal. For example, Kattke testified at deposition that Stone "wanted [him] to be a regional vice president for [IOF]. [Stone] indicated, however, that there was *no formal agreement in place* yet and that the formal agreement *should* be in place with the *target date* of July 1, which could be 30 days before, 30 days after." Kattke Dep. at 180 (emphasis added). The use of words like "want", "should" and "target date" do not constitute specific clear and definite promises as a matter of law because they are not explicit assertions without any doubt or tentativeness. *See Schoff*, 604 N.W.2d at 51. Plaintiff also relies on testimony that the RVP salary would be over $300,000 and that his territory would constitute Ohio, Michigan, Illinois, Indiana and Minnesota, Kattke Dep. at 168-72, 248. These are not explicit promises that Kattke would receive a RVP position, but instead comments on the potential RVP position's salary and responsibilities.

Moreover, Kattke's conclusion that he was "promised" the position is insufficient absent specific statements communicated to him. Minnesota courts analyze the promisor's alleged statements to the promisee, not the promisee's conclusion concerning what he has been promised. *See McKenzie v. Lunds, Inc.*, 63 F.Supp.2d 986, 1004 (D. Minn. 1999); *Hogan v. Minn. Mining & Mfg. Co.*, No. CX-96-2126, 1997 WL 177695, at *3 (Minn. Ct. App. Apr. 15, 1997). As a result, Kattke's promissory estoppel claim fails for a lack of a specific "clear and definite" promise.

**2. Reasonable/Detrimental Reliance**

Kattke also fails to raise a question of fact regarding whether his reliance was either reasonable or detrimental. To meet the second element of promissory estoppel, a plaintiff must show both reasonable and detrimental reliance. *See Fox*, 78 F.3d at 413; *Ruzicka*, 999 F.2d at 1320. Here, there can be no reasonable reliance because there is a contract between the parties that contradicts the alleged promise and no detrimental reliance because Kattke did not change residence, quit current employment or turn down a firm job offer.

"[R]eliance on an oral representation [is] unjustifiable as a matter of law only if the written contract provision explicitly state[s] a fact completely contradictory to the claimed misrepresentation." *Johnson Bldg. Co. v. River Bluff Dev, Co.*, 374 N.W.2d 187, 194 (Minn. Ct. App. 1985). At the beginning of his IOF employment, Kattke signed documents stating his role was to be director of emerging markets at a base salary of $150,000 per annum and employee benefits, and characterizing his employment at IOF as an at-will employee. Nolan Aff. Ex. B, C. The contract states that it "constitutes the entire agreement regarding the terms and conditions of employment." *Id.* Ex. C. This expressly contradicts a claim that IOF allegedly promised him another position at another salary. While Kattke alleges the "target date" for the filling of the RVP position was July 1, 1999, the offer and acceptance of the emerging markets position was signed by Kattke on May 20, 1999. Kattke Dep. at 180, Nolan Aff. Ex. B, C. The signed contract states that it is "expected" that Kattke will be in the emerging markets position for six months, which would employ him for many months after the alleged target date for his RVP position. *See* Nolan Aff. Ex. B. There is not reasonable reliance as a matter of law because the written contract contradicts the alleged promise. *See Johnson*, 374 N.W.2d at 194.

In addition, Kattke fails to show the requisite detrimental reliance because he did not leave an existing position or turn down a firm offer. Under promissory estoppel, "[r]eliance must be more than mere speculation; an actual change in the employee's position is required." *Schibursky v. IBM*, 820 F.Supp. 1169, 1181 (D. Minn. 1993). Kattke did not rely on the alleged promise by quitting his current job, nor did he decline any concrete job offers. Kattke Dep. at 90. As a result, he cannot show any detrimental reliance. *See Grouse v. Group Health Plan*, 306 N.W.2d 114, 116 (Minn. 1981); *Dumas v. Kessler & Maguire Funeral Home, Inc.*, 380 N.W.2d 544, 546-47 (Minn. Ct. App. 1986); *Mayer v. King Cola Mid-Am., Inc.*, 660 S.W.2d 746, 749 (Mo. Ct. App. 1983). Summary judgment is appropriate.

**3. Injustice**

The final element of promissory estoppel is that the promise must be enforced to prevent injustice. Unlike the first two elements, this is purely a question of law for the court and involves public policy considerations. *Cowles*, 479 N.W.2d at 391. First of all, the present situation is not one countenancing promissory estoppel as the totality of the circumstances do not work to cause clear injustice. Kattke (1) did not leave a current job to work at IOF, (2) did not turn down any offers of employment, (3) did not move to a new area in reliance on the promise, (4) was being paid $150,000 by IOF pursuant to an employment contract, and (5) has not alleged that he was "promised" anything other than at-will employment. Especially where the promise alleged is "at-will" employment, there must be some tangible detriment for a finding of injustice.

Second, Kattke's reliance is unreasonable because of the amorphous, indefinite statements he relied upon. *See Broderick v. Catholic Univ. of Am.*, 365 F.Supp. 147, 152 (D.D.C. 1973). This is an appropriate consideration in evaluating whether an injustice must be prevented.

Restatement (Second) of Contracts § 90 cmt. b (1981). Furthermore, the informality of such alleged assurances is a proper consideration in the injustice calculation. *Id.*; *Silberman v. Roethe*, 218 N.W.2d 723, 730 (Wisc. 1974). Another component is the sophistication of the parties. *See* Restat. § 90 cmt. b. This is not "a situation of an individual taken advantage of by a corporation or individual with superior knowledge of legal and business practices." *See Silberman*, 218 N.W.2d at 730. Kattke is an experienced, sophisticated businessman. Predictably, Kattke requested a written contract. Kattke Dep. 201-03. His failure to be given one by IOF alerted, or should have alerted, him to the softness of the employment "promise". Finally, there is an absence of public policy considerations like "the enforcement of bargains or the prevention of unjust enrichment, that would compel extraordinary judicial intervention to avoid injustice." *See Servais v. T.J. Mgmt. of Minneapolis*, 973 F.Supp. 885, 898 (D. Minn. 1997). Summary judgment of Kattke's promissory estoppel claim is granted.

**C. Minnesota Statute Section 181.64**

Kattke also brings claims under a little used statute, Minn. Stat. § 181.64, for making "false statements as inducement to entering employment." Kattke's claim fails because he did not "change from one place to another" as required by the statute. Section 181.64 reads,

> It shall be unlawful for any person. . . to induce, influence, persuade or engage any person to change from one place to another in this state, or to change from any place in any state, territory, or county to any place in this state, to work in any branch of labor through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning the kind or character of such work, the compensation therefore, [etc.]. . .

According to the plain language of section 181.64, a plaintiff must "change from one place to another." IOF asserts that this requires that a plaintiff move his residence, while Kattke

avers that it merely necessitates that a plaintiff enter into employment with the defendant. It is unnecessary to decide whether a change in "place" of employment, in addition to moving one's residence, suffices under the statute because Kattke did neither. "When the language of the statute is plain and unambiguous", it is given its plain meaning. *Kersten v. Minn. Mutual Life Ins. Co.*, 608 N.W.2d 869, 874 (Minn. 2000). To hold that no change is required would render the "change from any place" language without meaning, which is to be avoided in statutory construction. *See Boutin v. LaFleur*, 591 N.W.2d 711, 716 (Minn. 1999). The actual change of employment or residence requirement shows that the plaintiff actually *detrimentally* relied on the misrepresentation. IOF's Summary Judgment Motion is granted regarding this claim.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

Defendant's Summary Judgment Motion [Doc. No. 14] is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE** in their entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

Ann D. Montgomery

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: May 22, 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd